[Crim. No. 29047. Second Dist., Div. Four. Apr. 1, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDOLPH RODRIGUEZ, Defendant and Appellant.

**COUNSEL**

James A. Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—By information, defendant Rodriguez was charged with the commission of a lewd and lascivious act upon the body of Jong Mi K., a child under the age of 14 years, a violation of Penal Code section 288. By amendment to the information, defendant was charged with one prior felony conviction.

Defendant entered a plea of "not guilty." Pursuant to his motion made under Evidence Code sections 730, 952 and 1017, defendant was examined by a physician appointed by the court. A lineup that included defendant was conducted by order of the court. Defendant's motion to suppress identification was denied.

Trial was by jury except that defendant waived a jury trial on the issue of the prior felony conviction. Defendant was found guilty as charged. Defendant's motion for a new trial was denied, and the court found the allegation of the prior felony conviction to be true.

Mentally disordered sex offender proceedings were commenced and the criminal proceedings adjourned. The trial court, acting pursuant to Welfare and Institutions Code section 6307, appointed doctors to examine defendant; defendant waived a jury trial and further waived his right to confrontation of witnesses and his privilege against self-incrimination. Defendant was found to be a mentally disordered sex offender but one who would not benefit from treatment in a state hospital. Criminal proceedings were then resumed. Probation was denied, and defendant was sentenced to state prison for the term prescribed by law, the judgment reflecting a finding that defendant had suffered the prior felony conviction as charged.

Defendant appeals from the judgment of conviction.

## The Charged Offense

The incident which formed the basis for the offense charged in the information took place in the early afternoon at the McKinley Elementary School in Santa Monica on October 9, 1975.

The victim was a five-year-old Korean girl, Jong Mi K., enrolled in the kindergarten. She testified at trial that while she was in the bathroom at the school a man touched her in the crotch area and rubbed her vagina ("poji" in Korean). As a part of her testimony, she identified defendant as the man involved. She also testified that some time after the incident, she saw defendant again, looking through the window of her classroom.

Immediately after the bathroom incident, Jong Mi cried and was very upset. She was taken to the nurse's office at the school, and her mother, Kilsoon K., came to the school. Jong Mi and her mother had difficulty communicating in English, but telephoned Jong Mi's aunt, Wolsoon Kotzker, who told the school authorities what had happened to Jong Mi.

Mrs. Carol Neel, Jong Mi's kindergarten teacher, testified that on October 9, 1975, shortly after 1 p.m., she found a man she identified as defendant in the kindergarten classroom. She asked him what he was doing there, and he replied that he was visiting schools he had attended as a child. Defendant also spoke about his experience in Korea and Vietnam in rambling, incoherent fashion. Mrs. Neel testified he appeared to be in his late forties, was 5 feet 6 inches tall, and weighed 150 or 160 pounds. His hair was combed back; he wore glasses with dark rims and was unshaven. Defendant appeared to speak with some type of accent. After his conversation with Mrs. Neel, he left the classroom and the teacher followed him out.

Mrs. Neel then observed Jong Mi crying on the playground. Jong Mi started to climb the playground fence, appearing to be hysterical. Mrs. Neel removed her from the fence, and took her to the school nurse's office. She was present while Jong Mi and her mother spoke to Jong Mi's aunt on the telephone. She heard Jong Mi mention the word "vagina" in English.

On October 10, 1975, at approximately 1:50 p.m., Mrs. Neel was conducting a class in the kindergarten room, a class which included Jong Mi. Jong Mi stood up and cried out. Mrs. Neel saw defendant looking in the classroom window. She testified that there was absolutely no doubt

that defendant was the man she had seen at the school on October 9 and 10, 1975.

Phillip McKenzie, a McKinley School physical education aide, testified that on October 9, 1975, he was told to be on the lookout for a man loitering around the school grounds. He was given a physical description matching that of defendant, and remembered having seen such a man at the school previously. On October 10, 1975, he saw a man approaching a girl who had come out of the restroom. The man appeared to be asking her a question and was reaching out to say something to her. McKenzie identified defendant as the man. McKenzie asked defendant what he was doing at the school, and defendant replied that he was waiting for his daughter. Defendant tried to leave the area, but was prevented from doing so until the police arrived and arrested him. Harvey Wells, the principal of McKinley Elementary School, testified that he had summoned the police on October 9, after the Jong Mi incident, and again on October 10, when defendant reappeared at the school.

### THE VICTIM'S IN-COURT IDENTIFICATION
### OF DEFENDANT

Defendant first contends on appeal that the pretrial photographic identification of him by the victim, Jong Mi, was unnecessarily suggestive, and that, consequently, the in-court identification should have been suppressed. Defendant also argues that since the "taint" attached to the pretrial identification procedure also extended to the in-court identification, the burden was on the prosecution to establish that the in-court identification was made from an independent source, and that the prosecution failed in meeting that burden.

The factual background of Jong Mi's pretrial photographic identification of defendant was explored at a hearing outside the presence of the jury. It developed that on October 14, 1975, Jong Mi, accompanied by her mother and aunt, came to Police Officer Annette Bauer's office for an interview concerning the October 9, 1975, incident. While the officer left the room to get another chair, Jong Mi opened the file the officer had left closed on her desk, and observed therein a picture of defendant. Officer Bauer testified that these events took place due to her inadvertence in leaving the file unattended; she had not intended that Jong Mi look at the photograph. Both Jong Mi's mother and aunt stated that Jong Mi's curiosity caused the incident.

■ The constitutional principles governing pretrial identification procedures are well established. An in-court identification will be suppressed if it appears that the prior identification procedure employed to secure it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) ■ Appellate review of such an identification involves examination of the "totality" of the circumstances surrounding the identification, in order to determine whether the identification procedure was fair. (*Stovall* v. *Denno* (1967) 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].)

■ The trial court makes its determination as to the admissibility of the in-court identification evidence after conducting an evidence admissibility hearing, outside the presence of the jury, with respect to the preliminary facts surrounding the identification. (*People* v. *Enos* (1973) 34 Cal.App.3d 25, 38 [109 Cal.Rptr. 876].) If the trial court determines that the pretrial identification procedure was unfair, then the evidence admissibility hearing must continue, to explore another "preliminary fact," i.e., whether the in-court identification will be the product of a source independent of the unfair pretrial identification procedure, in order that the "taint" of that procedure is removed. The burden is placed upon the prosecution to establish the independent source of in-court identification by "clear and convincing evidence." (*People* v. *Citrino* (1970) 11 Cal.App.3d 778, 783 [90 Cal.Rptr. 80].)

■ Defendant argues, in the case at bench, that, contrary to the Attorney General's assertion, it matters not whether the incident at Officer Bauer's office was caused by inadvertence; that the harm, i.e., the likelihood of misidentification by Jong Mi, must be assessed without reference to the motivation of the police officer. We agree. We are mindful that the victim in this case was only five years of age, and operated with a language handicap. We hold, as a matter of law, that it was impermissibly suggestive for Officer Bauer, even though inadvertently, to have provided the opportunity for Jong Mi to see *one* photograph—a photograph of defendant. In our view, the trial court should have so ruled.

By ruling that the inadvertent identification was "fair," inquiry was precluded at the evidence admissibility hearing with respect to whether Jong Mi's expected in-court identification of defendant was the product of independent sources. We have examined the record, however, and have concluded that the prosecution did in fact meet the burden of proof

required—that of establishing an independent source of Jong Mi's in-court identification of defendant as the perpetrator of the charged offense. The prosecution satisfied its burden of proof by establishing, in Jong Mi's rather cryptic testimony, that she remembered defendant because she had seen him on *two* separate occasions *before* she saw the photograph of him; the first occasion on October 9, 1975, in the bathroom at McKinley Elementary School, and the second occasion on October 10, 1975, when she saw defendant looking through her classroom window.

We conclude, therefore, that the admission in evidence of the in-court identification of defendant by Jong Mi's testimony was not error. We reject defendant's contention that it was likely that an irreparable misidentification occurred. The testimony of witnesses Neel and McKenzie provided corroboration for Jong Mi's testimony that identified defendant as the perpetrator of the charged offense.

### EVIDENCE OF AN UNCHARGED OFFENSE

Defendant advances the argument that the trial court committed a prejudicial abuse of discretion by admitting evidence of an uncharged offense involving defendant—an incident at Madison Elementary School on October 8, 1975, one day before the charged offense occurred.

Heather D. testified that she was five years old and attended Madison Elementary School in Santa Monica. On October 8, 1975, she was near the bathroom with another child when a man asked her, "[d]o you want to kiss me?" and touched her on both arms. She went and told a teacher, Mrs. Stewart.

Mrs. Radcliffe testified that she was a kindergarten teacher at Madison and that Heather was one of her students. On October 8, 1975, Mrs. Radcliffe said she was in her classroom when defendant, whom she identified both at the court-ordered lineup and at trial, came in and told her he was there to see his old school. Defendant also talked about being in the service; she observed the defendant also speaking to Mrs. Stewart. Both Mrs. Stewart and Mrs. Ginn, another teacher, at the lineup and at trial, identified defendant as the school visitor on October 8, 1975.

Defendant contends that the Madison School incident lacked the highly distinctive common marks with the McKinley School incident—the charged offense—to meet the requirements of admissibility set forth in *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d

91]. Therefore, argues defendant, the prejudicial effect of the testimony of Heather D. and the teachers at Madison School outweighed its probative value.

■ The basic underlying principle with respect to admissibility against a defendant of evidence that he committed some other offense —offered to help establish that he committed the offense charged in the information—is that such evidence is *inadmissible* if its *only* relevancy is to establish that defendant has a character trait or propensity for committing criminal offenses in general or particular types of crimes, thereby leading to the inference that he acted in accordance with his character trait or propensity on the occasion in question and committed the charged offense. (Evid. Code, § 1101, subd. (a).)

■ Evidence that defendant committed an offense other than the one charged against him in the information becomes admissible, however, if such evidence has relevancy *other than* to prove defendant's character trait or propensity. (Evid. Code, § 1101, subd. (b).) One issue on which such other-crimes evidence is frequently offered is that of the *identity* of defendant as the perpetrator of the offense charged in the information. However, special rules have developed to determine when such other-crimes evidence becomes relevant to establish the identity of defendant as the perpetrator of the charged offense.

"When . . . a primary issue of fact is whether or not defendant rather than some other person was the perpetrator of the crime charged, evidence of other crimes is ordinarily admissible if it discloses a *distinctive modus operandi* common to both the other crimes and the charged crime." (*Haston, supra,* 69 Cal.2d 233, at p. 245.) (First italics added.) The theory underlying the *Haston* rule is that a showing of *some similarity* between the way the charged offense was perpetrated and the uncharged offense was perpetrated does not logically lead to the conclusion that the *same* person committed both offenses. The conclusion that the same person committed both offenses is necessary to establish *admissible relevancy* of evidence that defendant committed an offense other than that charged in the information—a relevancy other than as proof of defendant's character trait or propensity. If the same person committed both offenses and the evidence establishes that defendant committed the uncharged offense, it is reasonable to conclude therefrom that defendant was the perpetrator of the charged offense.

■ Since many crimes are committed in similar fashion by different individuals, the *Haston* principle requires a showing that there are *highly*

*distinctive* marks of similarity between the way the uncharged offense was committed and the way in which the charged offense was committed for evidence that defendant committed the uncharged offense to become relevant, on the issue of *identity*, to prove that defendant was the perpetrator of the charged offense.

In *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], the California Supreme Court amplified upon its *Haston* ruling. *Thornton* made three important points relative to the admissibility of evidence that defendant committed some other offense for the purpose of proving defendant's *identity* as the perpetrator of the charged offense. *First,* that the relevancy of other-crimes evidence on the issue of *identity*—to suggest that the perpetrator of the uncharged offense is also the perpetrator of the charged offense—depends on the presence of a *high degree of distinctiveness* in the common marks of the uncharged offense and the charged offense. *Second,* that the strength of the inference of identity in any case depends on two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks. *Third,* that if the *inference* of identity—that defendant is the perpetrator of the charged crime because he was the perpetrator of the uncharged crime—is a *weak* inference, the trial judge should exercise his discretion in favor of *excluding* such other-crimes evidence because the highly prejudicial effect of such evidence is manifest in every case.

Prior to *Thornton,* judicial decisions had sanctioned the admissibility of evidence that a defendant, charged with a sex crime, had committed a prior or subsequent *generally similar* sex crime to help prove the *identity* of defendant as the perpetrator of the charged sex crime. The rationale used was that evidence of a generally similar sex crime established a common scheme or plan or modus operandi. But little or no attention was paid to the question of whether there were any *distinctive* common marks between the charged crime and the uncharged crime as set forth for admissibility by the California Supreme Court in *Haston.* The *Haston* rule establishes that such other-crimes evidence, in the *absence* of a *substantial degree of distinctiveness* with the charged crime, is relevant on the issue of *identity* only on the theory of proving a defendant's character trait for committing criminal offenses, and such character-trait evidence is made *inadmissible* on the *identity* issue by the provisions of Evidence Code section 1101, subdivision (a). The basis for exclusion is the obviously great prejudicial effect of such evidence as compared with its slight relevancy.

■ In *Thornton,* however, the California Supreme Court applied the *Haston* requirement of *highly distinctive* common marks to *sex* cases. Thus, a *general similarity* between an uncharged sex offense and the charged sex offense is insufficient for admissibility of evidence that defendant committed such uncharged offense—offered on the issue of identity, common scheme or plan, or modus operandi to suggest that defendant was therefore the perpetrator of the charged sex offense.

Although *Thornton* does not directly overrule or repudiate prior decisions which have sanctioned admissibility of other-crimes evidence on the issue of identity in sex cases where only similar common marks were shown but *not* distinctive common marks, the *Thornton* court makes clear that *admissible relevancy* of other-crimes evidence on the issue of *identity* depends upon a showing that there are *highly distinctive* common marks between the uncharged crime and the charged crime, regardless of whether the charged crime is a nonsex crime or a sex crime. (See Jefferson, Cal. Evidence Benchbook (1975 Supp.) § 21.6, pp. 90-97.)

■ In the case at bench the question presented is whether the rule of *Haston* and *Thornton* is satisfied. Are there highly distinctive marks of similarity between the uncharged offense, the October 8 incident at the Madison School, and the October 9 incident at the McKinley School—which is the charged offense—to comply with the test of admissibility required by *Haston* and *Thornton*? We hold that the trial judge was justified in making the determination that the test of admissibility set forth in *Haston* and *Thornton* was satisfied in the instant case.

The factors of distinctive marks of similarity are the following: (1) both the uncharged offense and the charged offense took place in the same time period of the day at elementary schools in the same city, not too distant from each other and only one day apart; (2) the victims were both young female children of the same age group; (3) the perpetrator engaged in conversation with the children's teachers to explain his presence at the school; (4) the ensuing conversations with the teachers dwelt upon the same topics, i.e., former school attendance and purported military service. Of these various factors of similarity, the more distinctive ones are the factors of engaging the teachers in conversation and on the same topics of former school attendance and voluntary reference to former purported military service.

It is conceded in the case at bench that there are certain factors of *dissimilarity* between the two offenses. Thus, in the case of the charged

offense, the place of perpetration was in the bathroom, while the uncharged incident took place in the hallway close to the bathroom. Another factor of dissimilarity is that in the uncharged incident the perpetrator touched the victim on the arms with some statement to the victim, while in the charged offense the perpetrator touched the victim in the area of her private parts. But these differences are trivial differences compared with the significant and distinctive points of similarity between the methods by which the two offenses were perpetrated. The insignificant dissimilarities are far outweighed by the highly distinctive elements of similarity.

When there are both marks of similarity and marks of dissimilarity between a charged offense and an uncharged offense, the question presented is whether the trial judge exercised sound discretion in determining that the marks of similarity are such as to constitute *highly distinctive* common marks so as to satisfy the *Haston* and *Thornton* admissibility test on the issue of defendant's *identity* as the perpetrator of the charged offense. In the instant case we conclude that the trial court exercised a sound and meaningful discretion in determining that there were highly distinctive marks of similarity between the two offenses, and in thus admitting, on the issue of defendant's identity, evidence that the defendant committed an offense that was not charged in the information. The determination that the probative value of such evidence outweighed any danger of undue prejudice was not error.

The judgment appealed from is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.