[Crim. No. 11223. Third Dist. Dec. 4, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE LOVEN EDWARDS, Defendant and Appellant.

**COUNSEL**

Bruce Grinnell for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

SPARKS, J.—A jury convicted defendant of forcible rape (Pen. Code, § 261) and found he used a deadly weapon in the commission of that crime. (Pen. Code, § 12022, subd. (b).) He was sentenced to consecutive terms of eight years in prison for the rape, one year for the use of the weapon, and three years for a prior prison term served for a violent felony. (Pen. Code, § 667.5, subd. (a).) In this appeal, defendant objects to the manner of his identification and that of his vehicle and also to the admission of his clothing. We affirm the conviction.

The rape victim was a 19-year-old college student who had submitted an employment application showing her name, address, and phone number to the Olive Tree Restaurant in Chico in December of 1979. On the afternoon of December 18, she received a phone call from a person using the name Larry Townsend who said he was interviewing prospective employees for a new restaurant at a meeting that evening in a private home. The victim agreed to attend the meeting and was instructed to be at a local gas station at 7 p.m. for directions to the home. She arrived alone in her car and was met by a black man in a sailor hat driving a compact car.

The man told her to follow him, drove to a remote spot, and raped her. He displayed a knife and threatened to kill her if she did not comply with his instructions to participate in sex acts. Although it was dark

and the area was not illuminated, the victim had several close views of her attacker's face during the encounter. She provided a detailed description of him and of the car he drove to the police about an hour after the attack. Later that evening she identified defendant at a local hospital where he had been taken by police for blood tests after his arrest and identified the car parked in defendant's driveway as the one used by the rapist.

At trial defendant claimed alibi and misidentification. On appeal he contends that the court erred in denying his pretrial motions to suppress evidence obtained during his arrest, the identification of him and the vehicle by the victim on the evening of the rape, and her subsequent identifications of him. Specifically, he claims that the victim's identification of him in the hospital was impermissibly suggestive, violated his right to counsel and tainted all subsequent identifications of him. He also attacks the victim's identification of his vehicle and of his photograph. Finally, he claims that his arrest at home was illegal and a pair of pants and a sailor hat found in his bedroom were erroneously admitted into evidence.

The suppression motions (Pen. Code, § 1538.5) were submitted on evidence taken at pretrial hearings and on the transcript of a lengthy preliminary hearing. ■ In such proceedings, the trial court sits as a finder of fact. (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) On appeal all presumptions favor the exercise of its evidentiary powers; its findings (express or implied) must be upheld if supported by substantial evidence. (*People* v. *Manning* (1973) 33 Cal.App.3d 586, 599 [109 Cal.Rptr. 531].) In this case, the trial court rejected defendant's arguments on the identifications and the arrest when it denied his motions to suppress and rejected the magistrate's previous suppression of the identifications on the People's motion. (Pen. Code, § 1538.5, subd. (j).)

Evidence adduced at the preliminary hearing showed the victim promptly reported the rape, and a deputy sheriff was dispatched to interview her at about 8:30 that evening. She went to Enloe Hospital for an examination at about 9:30 p.m. About 11:30, another deputy asked her to go to Chico Community Hospital to look at a man picked up on "an unrelated charge." Before she looked through a window into the room where defendant was sitting on a gurney, the deputy told her the man might or might not be the one who attacked her. The only people in the room at the time were defendant, who is black, and a white uni-

formed deputy sheriff. When defendant turned to face the window (10 to 20 feet away), the victim said, "That's him, the man that attacked me." The deputy with her asked her to look again to be sure. She did and repeated the identification.

At the deputy's request, the victim then drove to a cul-de-sac. Without prompting, she pointed out defendant's car as the one used by the rapist.

I

Defendant first contends the hospital identification was constitutionally defective for lack of counsel.[1] Since *Kirby* v. *Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], California courts have assumed that no right to counsel attaches to identification procedures until criminal charges are instigated. (*People* v. *Bustamante* (1981) 30 Cal.3d 88, 96 [177 Cal.Rptr. 576, 634 P.2d 927]; see *People* v. *Chojnacky* (1973) 8 Cal.3d 759, 764-765 [106 Cal.Rptr. 106, 505 P.2d 530].) Our Supreme Court rejected that view in *People* v. *Bustamante, supra.* The *Bustamante* court held that "article I, section 15 of the California Constitution, affords to a defendant the right to the presence of counsel at a preindictment lineup." (*Id.,* at p. 102.)

The court's reasoning in *Bustamante* is the view advocated by defendant in his appellate brief. Nevertheless, the case is of no aid to defendant. The court expressly ruled that its holding applies only to lineups held after the date of finality of the opinion. (30 Cal.3d at p. 102.) Our holding in *People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 411 [164 Cal.Rptr. 349], that "[t]he Sixth Amendment right to counsel, and thus the *Wade-Gilbert* per se exclusionary rule, does not apply to events before the initiation of adversary criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment [citations]," consequently applies to this case. We therefore conclude defendant was not deprived of any right to counsel when the victim identified him at the hospital.[2]

---

[1]Although defendant's counsel explicitly disavowed this argument in the superior court, the magistrate's initial suppression was based on the right to counsel and the superior court considered the issue in connection with the People's Penal Code section 1538.5, subdivision (j), motion. We therefore consider the argument.

[2]We leave for another day the question of whether the holding in *Bustamante* applies only to lineups or to a field identification as well. Prior to the *Bustamante* decision the propriety of in-field identifications of a suspect without the presence of counsel was well established. (See, e.g., *People* v. *Savala* (1981) 116 Cal.App.3d 41, 49 [171

## II

■ Defendant's second argument is that the hospital identification was impermissibly suggestive and tainted later identifications. "When the defendant asserts pretrial identification was unnecessarily suggestive, he must show it gave rise to a very substantial likelihood of irreparable misidentification. [Citations.] In making this determination, the trial court should consider certain factors, i.e., the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; the level of uncertainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. [Citation.]" (*People* v. *Savala, supra,* 116 Cal.App.3d at p. 49.)

We find the trial court's rejection of the suggestiveness claim supported by substantial evidence. The victim testified the scene was dark, but she could see. She saw her assailant's face after she got out of her car, when he pushed her to the ground, when he knelt over her, when he threatened her with the knife, after he pulled a stocking (which did not distort his features) over his face and raped her standing against the car, and when he left the scene. Her view of his face with the nylon covering from a foot away lasted about a minute and a half. She noticed that he was extremely thin and "Something about his nose and his forehead were unique." As he drove away, she noticed the license plate number on his vehicle. This testimony amply supports the conclusion that the victim's opportunities to view her assailant and her degree of attention were sufficient to enable her to make an accurate identification later that evening.

The victim described her assailant to police as "a Negro male adult of average height, extremely thin, wearing gold colored Levis, a dark colored shirt, and a white dixie cup type sailor hat that he had pulled down." The description fit defendant. Her identification of defendant

Cal.Rptr. 882]; *People* v. *Hall* (1979) 95 Cal.App.3d 299, 309 [157 Cal.Rptr. 107]; *In re Richard W.* (1979) 91 Cal.App.3d 960, 970 [155 Cal.Rptr. 11]; *People* v. *Craig* (1978) 86 Cal.App.3d 905, 913 [150 Cal.Rptr. 676], and cases cited therein.) The rationale of this line of cases was earlier stated to be "... the great reliability of on-the-spot identification by the victim; the service to law enforcement, the public and the criminal suspect of knowing promptly whether the right person has been apprehended; and the practical impossibility of representation by counsel at an immediate in-the-field identification." (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 764 [86 Cal.Rptr. 767].)

was unequivocal. The identification occurred shortly after 11:30 p.m.; the encounter between defendant and the victim began around 7 p.m. The time factor was thus not a significant impediment to an accurate identification.

The trial court expressly found, after considering the entire record and the totality of all of the circumstances, that "[t]he manner in which the single-person showup was conducted at the hospital was not inherently unfair. Nor, was it impermissibly suggestive. So, there was not a very substantial likelihood of irreparable misidentification . . . ." As we stated in *People* v. *Savala, supra,* 116 Cal.App.3d at page 49, "[t]he trial court's finding that the challenged pretrial identification procedure was proper is binding on this court if supported by substantial evidence." That finding, as we have already noted, was clearly supported by substantial evidence.[3]

■ Defendant also contends that his identification was irrevocably tainted by an inadvertent observation of his photograph by the victim at the sheriff's office. Two months after the rape, the victim and a friend went to the sheriff's office to pick up a subpoena. They were asked to wait in a deputy's office. The deputy had forgotten there was a picture of defendant on the desk. The victim saw the photograph and told her friend "that was the man that attacked me."

In *People* v. *Rodriguez* (1977) 68 Cal.App.3d 874, 881 [137 Cal. Rptr. 594], the court held that, as a matter of law, ". . . it was impermissibly suggestive for [a police officer], even though inadvertently, to have provided the opportunity for [the victim] to see *one* photograph— a photograph of defendant." Like the *Rodriguez* court, we too have examined the record to determine if the taint of that inadvertently unfair identification procedure had been purged and have similarly concluded ". . . that the prosecution did in fact meet the burden of proof re-

---

[3]Implicit in that finding was the determination that the victim's identification of the defendant rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the postrape, preindictment identification. For that reason there was no exploitation of any illegal arrest and hence no basis to suppress defendant's identity on Fourth Amendment grounds. Here, as in *United States* v. *Crews* (1980) 445 U.S. 463, 475 [63 L.Ed.2d 537, 548, 100 S.Ct. 1244], ". . . the record plainly discloses that prior to his illegal arrest, the police both knew [defendant's] identity and had some basis to suspect his involvement in the very crimes with which he was charged. . . . The exclusionary rule enjoins the Government from benefitting from evidence it has unlawfully obtained; it does not reach backward to taint information that was in official hands prior to any illegality."

quired—that of establishing an independent source of [the victim's] in-court identification of defendant as the perpetrator of the charged offense." (*Id.*, at pp. 881-882.)

Our review of the record in this case fails to reveal any unpurged taint from the identifications we have discussed which affected the victim's in-court identifications of the defendant. At his own request, defendant was not visible to the victim at the preliminary hearing. The magistrate ordered a photographic display of 18 photographs, including 1 of defendant which the victim had not seen previously. The victim selected defendant's photograph as the likeness of the man who attacked her. At trial, she testified that her identification of defendant for the jury was based on her recollection of the attacker.

## III

Defendant next contends that the circumstances of the victim's identification of his vehicle after she identified him at the hospital were so impermissibly suggestive that testimony on the subject should have been suppressed.[4] That novel contention is eristic. The due process proscription against impermissibly suggestive identification procedures relates to the identification of people—not physical evidence. We have not been cited to a single case in California applying that proscription to the identification of pieces of physical evidence and our independent research has revealed none. That issue, however, was recently addressed by the Supreme Court of Iowa in *State* v. *Bruns* (Iowa 1981) 304 N.W.2d 217. There the victim was sexually assaulted in an automobile. The suspect was later arrested on an unrelated charge and his vehicle impounded. The victim was taken by the police to the place where the vehicle was stored and she identified it as the one in which the offenses had occurred. The defendant, analogizing to cases recognizing a due process right to exclude a suggestive, unnecessary and unreliable pretrial identification of an accused, argued on appeal that the trial court should have excluded evidence of the vehicle identification. Rejecting that contention, the court stated: "We decline to extend cases protecting the accused's right to a fair pretrial identification of his person to the pretrial identification of items of physical evidence. The pretrial identification by a victim of a car in which the crime occurred does not impli-

---

[4]The victim described the car as a "Pinto-type" hatchback with license number 172 SHO. The vehicle was a Mercury Bobcat station wagon, license number 871 SHO. In respect to size and color, her description was accurate.

cate the due process rights of a defendant. [Citations.] While the procedure used here, identification of an impounded car by a young victim at the request of police, may make the evidence of the identification suspect, it does not give rise to a claim of denial of due process that will result in suppression of the evidence. If the identification of the car was suspect, the credibility of the identification witnesses could properly be placed before the trier of fact by cross-examination and final argument. The weight of the identification evidence is for the trier of fact. [Citations.]" (*Id.*, at p. 219.)

We also hold that the identification of physical evidence by a witness is not suppressible under the *Simmons* rubic (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]), upon the ground that the "... procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Instead, the trustworthiness of that identification testimony is to be tested, like other evidence discovered during a criminal investigation, by cross-examination, impeachment and argument.

## IV

■ Defendant's final contention is that the items of clothing (a sailor hat and a pair of tan pants) seized when he was arrested in his bedroom at about 11 p.m. on the evening of the rape should have been suppressed as the product of an illegal arrest under *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]. The trial court found exigent circumstances for the warrantless arrest and denied the motion.

"Exigent circumstances" were defined by the *Ramey* court to mean "... an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*Id.*, at p. 276.) The arresting officer here testified that he entered the residence without a warrant because he feared that the suspect might flee or destroy evidence by discarding his clothing or by taking a shower. Those generalized misgivings present in every case do not, however, constitute exigent circumstances. Here, as in *Ramey*, the suspect was known and nearly four hours had elapsed since the attack. If the defendant intended to flee or to destroy evidence he had ample opportunity to do so before the police arrived at his residence.

As the Court of Appeal noted in *James v. Superior Court* (1978) 87 Cal.App.3d 985, 993 [151 Cal.Rptr. 270], "[t]he prosecution has not pointed to specific and articulable facts that reasonably justify the conclusion that the destruction of evidence was imminent.... An objective evaluation of the facts articulable by the police that destruction of evidence is imminent is required to support exigent circumstances." Finding no such facts here, we conclude that defendant's arrest was illegal under both state and federal constitutional law. (*People v. Ramey, supra*, 16 Cal.3d 263; *Payton v. New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371].)

■ Since the seizure of defendant's clothing was incident to his illegal arrest, it is "... per se an exploitation of improper police conduct ...." (*In re Reginald B.* (1977) 71 Cal.App.3d 398, 403 [139 Cal. Rptr. 465].) Accordingly, the motion to suppress should have been granted and the clothing excluded from evidence. ■ The error in admitting that evidence, however, was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) First of all, defendant cannot complain of the admission of the pants into evidence since it was he who offered them. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 266, p. 4257.) Second, given the strength of the prosecution's case on the identification issue, there was no conceivable prejudice to defendant by way of the sailor hat.

Finally, the Attorney General correctly notes that the abstract of judgment improperly reflects that the one-year enhancement was imposed pursuant to subdivision (a) rather than subdivision (b) of section 12022 of the Penal Code. Since the use of a knife, not a firearm, was charged and proven, the abstract should be modified. The trial court is directed to prepare an amended abstract showing that the one-year enhancement was imposed pursuant to Penal Code section 12022, subdivision (b), and forward it to the Department of Corrections.

As modified, the judgment is affirmed.

Evans, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied December 29, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1982.