Filed 3/8/22  P. v. Carey CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARQUIS CAREY,<br><br>    Defendant and Appellant. | G059652<br><br>(Super. Ct. No. 19NF3351)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Appellant Marquis Carey and two associates robbed a marijuana dispensary while armed with handguns. As they entered the dispensary, each provided his California driver's license (CDL) to the dispensary's security guard, who entered their names and personal information into a computer.

After the robbery, the security guard provided the robbers' identifying information to police investigators, who were able to retrieve the robbers' driver's license photographs from the Department of Motor Vehicles (DMV). That same day, the security guard identified Carey from his DMV photograph. Carey was charged with and convicted of several counts of second-degree robbery, among other crimes.

Carey contends his conviction must be reversed because the investigators' identification procedure was unduly suggestive and the security guard who identified him was unreliable. He also argues his rights to a fair trial and the presumption of innocence were violated when the trial court informed the jury that Carey's "facility" was on lockdown due to COVID-19. We reject these contentions and affirm the judgment.

**FACTS**

In March 2017, Carey and two associates entered an illegal marijuana dispensary in Anaheim, California. Each handed his CDL to an armed security guard, who confirmed the pictures on the CDLs depicted each of the three individuals standing before him. Because Carey and his associates had never visited the dispensary before, the security guard entered their names and information into a spreadsheet about first-time customers on a laptop computer.

The security guard then allowed Carey and the other two men into the dispensary. As they entered, one man drew his weapon and told the security guard to "[g]ive me your gun and don't do anything funny." Carey and his two associates, armed with semiautomatic handguns, then proceeded to rob the dispensary and the customers inside, taking marijuana, wallets, and other items.

2

After the robbers fled, the security guard wrote down each robber's name from memory and provided them to the police when they arrived. Meanwhile, a woman who worked at the dispensary texted a screenshot of the spreadsheet to the security guard on his cellular phone.[1]

Investigators used the names of the suspects provided by the security guard to obtain their CDL photographs from the DMV. Later that day, the investigators showed the security guard Carey's photograph, and the security guard identified him as one of the robbers.

Carey was charged with several counts of second-degree robbery and criminal threats, among other charges. He elected to represent himself at trial.

Carey moved pretrial to exclude the security guard's identification of him on foundation and reliability grounds. He also objected to the screenshot of the computer spreadsheet listing the names and information of the robbers. After holding a hearing under Evidence Code section 402 at which it heard testimony from the security guard, the trial court found the identification and screenshot were both admissible.[2]

---

[1] The actual laptop containing the spreadsheet was never recovered. Evidently, the dispensary's owners fled with the computer before police arrived and refused to cooperate with police.

[2] The trial court explained its ruling: "[A]s to the suggestibility of the photo [lineup, the security guard] testified that when . . . first-time customers come into the [dispensary], he looks at their I.D.'s, compares the I.D. photos to the person standing in front of him, then inputs the info. He made the observation from one to two feet away from him. Short time later, an hour to two hours later, [he] was shown . . . a photo of Mr. Carey. [¶] It was limited suggestibility in this instance because the defendants' names [and] driver's license numbers were put in the system. Using that info, DMV photos were run and the defendant was identified. [¶] Additionally, the police had an interest to try and apprehend the people involved in this incident who had guns. And, you know, there was a concern about trying to get this investigation going as soon as they could. [¶] So in light of all that, the photo will be admitted." As for the screenshot, the trial court ruled "there is sufficient reliability for the screenshot to be introduced. [The security guard] logged the individuals in for the first time and entered their names, date of birth, and I.D. numbers into the computer system. He [identified] the screenshot that was

3

At trial the security guard identified Carey as one of the people who robbed the dispensary. He also testified about the screenshot of the computer spreadsheet and how he identified Carey as one of the robbers during the police investigation.

After the close of evidence, Carey was temporarily unable to appear in court because the county jail in which he was being held was required to undergo a 14-day quarantine due to COVID-19 protocols. When explaining Carey's absence to the jury, the trial court mentioned several times that Carey was residing at a "facility."[3]

When he returned to court and learned about the trial court's comments, Carey complained he did not want the jury to know that he was in custody. Accordingly, the court instructed the jury not to use anything about the fact Carey's facility prevented him from returning to court against him, and also instructed the jury not to speculate about the term "facility" or whether Carey was in custody during its deliberations.

The jury convicted Carey on all charges, and the trial court sentenced him to 19 years 4 months in prison. Carey appealed.

---

shown in court as to what was logged in at the scene that day. [¶] So there is sufficient reliability for that to come in."

[3] The trial court informed the jury: "Mr. Carey is not [here]. [¶] At the facility where Mr. Carey resides, there has been a quarantine because of the coronavirus for 14 days. He doesn't have the virus, but there has been a quarantine; so he can't be transported." Two weeks later, the court updated the jury as follows: "On the Thursday that I last saw you, there was a lockdown at the facility where Mr. Carey was staying. The lockdown was for 14 days. And it is a group of almost 200 people at the facility." "Well, the facility called us and" "informed my bailiff that the lockdown is not going to be lifted until Friday and the first day we can [resume] is Monday. [¶] This is not Mr. Carey's fault. He is not responsible for any of this. I just want everybody to know that. . . . It is something where, you know, the facility needs to keep this Covid under control and they need to, you know, lock down sections. [¶] Mr. Carey doesn't have it, but he is part of the lockdown because somebody ended up in that section of the facility with it."

4

## DISCUSSION

1. *The Pretrial and In-court Identification Procedures*

Carey first contends the investigators' use of a single DMV photograph in the identification process was unduly suggestive, the security guard was unreliable, and the trial court therefore erred by admitting the security guard's infield and in-court identifications. We cannot agree.

"In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances . . . ." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*).) Even if we determine the procedure was unduly suggestive, no due process violation arises so long as the identification itself was reliable under the totality of the circumstances. (*People v. Wilson* (2021) 11 Cal.5th 259, 283 (*Wilson*).)

"To determine whether a procedure is unduly suggestive, we ask 'whether anything caused defendant to "stand out" from the others in a way that would suggest the witness should select him.'" (*People v. Yeoman* (2003) 31 Cal.4th 93, 124.) To determine whether the identification was reliable under the totality of the circumstances, we "tak[e] into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*Cunningham, supra,* 25 Cal.4th at p. 989.)

"A defendant's claim that an identification procedure was unduly suggestive is a 'mixed question of law and fact.' [Citations.] This standard of review applies because 'the facts are established, the law is undisputed, and the issue' we must resolve 'is whether the law as applied to the established facts is violated.' [Citation.] We

review the so-called 'historical facts,' those factual determinations that underpinned the trial court's conclusion that the identification procedure was or was not suggestive, 'under a deferential standard.' [Citation.] This standard acknowledges that the trial court may have made 'credibility determinations,' that 'contribute[d] to deciding the facts of what had already happened, [but] were not dispositive of the inquiry because the trial court did not have a "first-person vantage"' to whatever 'facts occurred outside of court.'" (*Wilson, supra,* 11 Cal.5th at p. 283.)

In this case, Carey handed his CDL to the security guard just before he and his colleagues robbed the dispensary. The security guard stood only feet away from Carey at that moment. The security guard then entered Carey's name and personal information into the spreadsheet on the laptop. Immediately after the robbery occurred, the security guard wrote down Carey's name from memory so he could provide it to police; he also provided investigators with a screenshot of the spreadsheet that contained Carey's name and other information. Investigators then obtained Carey's DMV photograph, which they showed the security guard later that same afternoon, at which point the security guard positively identified Carey.

The investigators' use of a single photograph, as opposed to a photographic lineup, was suggestive. But it was not *unduly* suggestive because the fact that the security guard provided Carey's driver's license information to investigators was what enabled them to use Carey's DMV photograph in the first place.

In any event, the resulting identification was reliable under the totality of the circumstances. Given the security guard's immediate proximity to Carey when he viewed him, his contemporaneous documentation of Carey's name and information, and the fact he identified him just hours after the robbery, the identification bore substantial

6

indicia of reliability.[4] We therefore find no due process violation.[5] (See *People v. Contreras* (1993) 17 Cal.App.4th 813, 820-821 ["numerous cases have found no due process violation from the admission of evidence of identifications made either at the time of or subsequent to a single photo showup"].)

   2.   *The Trial Court's References to Carey's "Facility"*

Carey also claims the trial court violated his right to a fair trial by telling the jury that his "facility" was on "lockdown" due to COVID-19 after the close of evidence. Carey claims this undermined the presumption of innocence by calling attention to his incarceration. Again, we cannot agree.

It is true that certain references to a defendant's custodial status can impair the presumption of innocence and violate his or her right to due process and a fair trial. (See, e.g., *Estelle v. Williams* (1976) 425 U.S. 501, 504-505 [defendant wearing jail clothing can be "constant reminder" of custodial status and impact a juror's judgment].) However, an "isolated comment that a defendant is in custody simply does not create the potential for the impairment of the presumption of innocence that might arise were such information *repeatedly* conveyed to the jury." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1336.)

---

   [4]   Throughout his briefs, Carey repeatedly argues the security guard was not to be trusted, at times even suggesting the robbery was an "inside job" in which the security guard participated. However, the trial court found the identification admissible, and as noted, we must review the factual and credibility determinations underpinning the court's ruling under a deferential standard.

   [5]   The robbery and identification process occurred in March 2017, before our Legislature passed Senate Bill No. 923 (stats. 2018, ch. 977, § 2), which requires law enforcement agencies to adopt regulations for conducting photographic and live lineups to ensure their reliability and accuracy, and which sets forth various minimum requirements for lineups. (See Pen. Code, § 859.7.) Because those requirements were not in effect when the robbery occurred, they do not impact our analysis.

In this case, the trial court's comments to the jury about Carey's "facility" were brief and insignificant in the context of the entire trial. Further, the term "facility" could have easily been a reference to an assisted living facility, a group care facility, or another type of facility for people in need of personal services. On this record, we conclude the court did not err by referencing his residential status in a "facility" that was on temporary lockdown due to the pandemic.

**DISPOSITION**

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


MARKS, J.*

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.