[Crim. No. 986. Fifth Dist. June 14, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
GARVIN DALE WHITE, Defendant and Appellant.

46

## COUNSEL

Wild, Christensen, Carter & Blank, Robert G. Carter and George A. Carter for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edsel W. Haws and Gary Allon Larson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), J.**—Garvin Dale White was convicted by a jury on nine counts contained in an indictment charging violation of various sections of the Health and Safety Code involving dangerous drugs. (Health & Saf. Code, §§ 11912, 11911, 11530.5, 11500 and 11910, and conspiracy to violate Health & Saf. Code, § 11912 in violation of Pen. Code, § 182.) He seeks reversal of the subsequent judgment entered thereon by reason of claimed undue restriction by the trial court upon his effort to impeach the police informant by cross-examination and the refusal of the trial court to declare a mistrial due to appellant's voluntary absence during the last three days of the five-day jury trial and his absence at the time of pronouncing judgment.

The purport of appellant's first complaint is that the court permitted the prosecution to portray the undercover agent, Clinton Beeler, in a false image of uprightness, integrity and truthfulness, by permitting reference to him by the prosecution and prosecution witnesses as a deputy in the sheriff's office, and, thereafter, unduly restricting the defense from developing that he was not a person with the character of a regular deputy sheriff, but was in fact a thief, a narcotics addict, and a pimp, who sold the services of his wife. During the testimony of the state narcotics agent, Beeler was referred to as a "reserve deputy sheriff," or as "Deputy

Beeler." In addition, the district attorney asked the questions of Mr. Beeler and received the answers set forth in the margin.[1]

During the course of a lengthy cross-examination, appellant's counsel asked the question set forth in the margin[2] to which an objection, as indicated, was sustained. Appellant claims it was prejudicial error for the court to have sustained the objection to this specific question.

Certainly, the defense should, under such circumstances, be permitted to go into the employment background of the informant and develop that he might not, in fact, have been a deputy sheriff or that he had or had not, in fact, been given that title. He should have been allowed to develop the purpose and scope of his training and work for the sheriff's department.

In this instance, however, defense counsel did not rephrase the question or pursue the matter. Additionally, it appears that the specific inquiry was answered by the direct examination set forth in footnote 1. Furthermore, a review of the transcript makes it evident that the lengthy and intense line of questioning upon cross-examination developed his past work association with the appellant, his marital problems, and his very recent contacts with and employment by the sheriff's department as an undercover informant, and that the primary reason for his employment was his ability to contact people who were involved in the nefarious business of dealing in

---

[1]"MR. BLICKENSTAFF: May I have one moment, your honor?
"THE COURT: You may.
"MR. BLICKENSTAFF: Q. All right. Mr. Beeler, when did you begin working as an undercover operator for the law enforcement agencies?
"A. Before the 10th. I was helping another Sheriff's Officer in the Fresno County Sheriff's Office.
"Q. Do you know how long before the 10th that would have been? A. Two or three weeks.
"Q. All right. And did you attain a capacity as a reserve Deputy Sheriff? A. Yes, I did.
"Q. Do you know when that was? A. Just shortly after the first buy from Richard Clayborn.
"Q. All right. Mr. Beeler, were you compensated for your work for the law enforcement agencies in town? A. Yes, I was.
"Q. How were you compensated?
"A. The Sheriff's Office gave me $100 and the Federal Narcotic Bureau gave me $20 because I was not working at the time at any other employment and that was it, yes.
"Q. That was the extent of compensation that you received?
"A. Right."

[2]"MR. GEORGE CARTER: Q. All right. Now, you weren't made an Honorary Deputy or whatever you call them when you first went and saw the law enforcement officer in July, were you?
"MR. BLICKENSTAFF: Your Honor, I object to the way that question is couched.
"THE COURT: Objection sustained."

contraband. Nothing appears to suggest that the trial judge would not have permitted a wider scope of inquiry into these areas had the defendant desired to pursue the same. Taking the testimony as a whole, we are of the opinion that the jury could have arrived at no conclusion other than that Mr. Beeler was not circumfused by the aura of respectability that accompanies employment as a regular deputy sheriff.

■ The court did, in fact, correctly admit opinion testimony that the informant's reputation for truth and veracity was bad. (Evid. Code, § 786.) However, the court properly sustained an objection to an offer of proof that the informant was a pimp, thief, a narcotics addict, and that he sold the services of his wife, as specific instances of conduct are inadmissible to attack or support the credibility of a witness. (Evid. Code, § 787; *People v. Swayze,* 220 Cal.App.2d 476, 494 [34 Cal.Rptr. 5].)

Appellant was not in custody during the trial. On the morning of the third day of trial appellant failed to appear. That afternoon the court continued the matter until the following morning and, during the recess, extensive search for and inquiry as to the whereabouts of the defendant were made. He could not be located. The conclusion is inescapable that the appellant had voluntarily absented himself, and no contention to the contrary is made by appellant. Appellant's counsel made a motion for a mistrial, which was denied. The case, thereupon, continued, in the absence of the appellant, for two additional days to its conclusion. Twenty days later, and still in the absence of the appellant, the court denied probation and rendered judgment sentencing him to state prison for the term prescribed by law. Appellant's counsel at that time informed the court that he had no knowledge of appellant's whereabouts.

On May 6, 1970, 10 days after the pronouncement of judgment, the appellant, after being taken into custody, appeared before the court with his counsel and stated, among other things, "I did leave on my own accord."

■ We have concluded that by voluntarily absenting himself, the appellant waived his right to be present during the trial and sentencing. As the court in *People v. Anderson,* 6 Cal.App.3d 364 (2d Dist.) [85 Cal.Rptr. 669] arrived at an opposite result on facts indistinguishable from those in the case at bench, we feel constrained to set forth in some detail the basis of our conclusion.

The California Constitution, article I, section 13, provides in part: "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend in person and with counsel. . . ."

At the time of the trial here involved, Penal Code section 1043 states: "(a) The defendant in a felony case must be personally present at the trial.

If he fails to appear at any time during the course of the trial and before the jury has retired for its deliberations, or the case has been finally submitted to the judge, and after the exercise of reasonable diligence his presence cannot be procured, the court shall declare a mistrial and the case may be again tried. Nothing in this subdivision shall limit the right of a defendant to waive his right to be present in accordance with the provisions of Section 977."[3]

In *People* v. *Rogers* (1957) 150 Cal.App.2d 403 [309 P.2d 949], written by Mr. Justice Peters during his tenure as Presiding Justice of the Court of Appeal, First Appellate District, the defendant, an attorney, who was representing himself, became mentally disabled to proceed by reason of a self-administered over-injection of insulin during the course of a trial, which he claimed caused him to be in shock and too sick to proceed. The court found, upon medical testimony, that the condition may have been feigned, and, even if genuine, the defendant could have simply and readily corrected the condition by eating lunch. This the defendant refused to do. The trial court denied a motion for a continuance and proceeded to try the case to its conclusion. The appellate court defined the issue as:

"It is whether this voluntary 'mental absence' of the defendant at the conclusion of his trial was a violation of defendant's constitutional and statutory right to be 'present' when his case was tried. This, in turn, depends upon whether a defendant in a felony case can waive his right to be mentally present at his trial by voluntarily absenting his mental self after the trial has commenced." (P. 413.)

The majority rule in the United States is that in a noncapital case the defendant is deemed to have waived his right to be present by voluntarily absenting himself after the trial has commenced. (*Diaz* v. *United States,* 223 U.S. 442, 455 [56 L.Ed. 500, 505, 32 S.Ct. 250]; *People* v. *Welsh* (1964) 42 Misc. 2d 296 [248 N.Y.S.2d 14]; 21 Am.Jur.2d, §§ 284, 286.) *Diaz* was cited and relied upon in the recent case of *Illinois* v. *Allen* (1970) 397 U.S. 337 [25 L.Ed.2d 353, 90 S.Ct. 1057], which authorized the expulsion of a disruptive defendant from the courtroom and the continuation of the trial in his absence. While *People* v. *Rogers, supra,* 150 Cal.

---

[3]By Statutes 1970, chapter 1255, the Legislature amended section 1043 to read, insofar as here pertinent, as follows: "(a) Except as otherwise provided in this section, the defendant in a felony case shall be personally present at the trial. (b) The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases: . . . (2) Any prosecution of an offense which is not punishable by death in which the defendant is voluntarily absent."

App.2d 403, recognizes that California may have adopted the minority rule in the enactment of Penal Code section 1043, nevertheless, it expressly holds that the right to be present can be waived. We do not presume to be able to improve upon the well-reasoned expression of the court in that case, setting forth the basis of its conclusion. Accordingly, we quote from pages 414-415: ". . . But this does not mean that section 1043, under no circumstances, can be waived. There are other Penal Code sections that permit important steps to be taken in a felony case where the defendant voluntarily absents himself. Thus, under proper circumstances, a verdict can be received in the absence of the defendant (Pen. Code, § 1148), and judgment may, in a proper case, be pronounced in the defendant's absence (Pen. Code, § 1193). Moreover, although viewing the scene of a crime by the jury is in effect taking evidence, in *People* v. *Mathews,* 139 Cal. 527 [73 P. 416], it was held that the right of a defendant to be present at such viewing could be waived by a failure to request to be present. There are other cases holding that defendant's right to be physically present at his trial on a felony charge is not an absolute right, and that, if the proceedings taken in his absence did not prejudice him, it is not prejudicial error. (*People* v. *Isby,* 30 Cal.2d 879 [186 P.2d 405]; *People* v. *Trubschenk,* 134 Cal.App.2d 796 [286 P.2d 436]; see Pen. Code, § 1181, subd. 1.)

"The fact that Penal Code, section 1043, is apparently mandatory in its language will not prevent a waiver in a proper case. There are many Penal Code sections, mandatory on their face, which have been held subject to waiver. Thus, section 686, subdivision 3, provides that a defendant is entitled 'to be confronted with the witnesses against him.' In *People* v. *Wallin,* 34 Cal.2d 777 [215 P.2d 1], it was held that this right could be waived. Section 1382 provides that the 'court, unless good cause to the contrary is shown, *must* order the prosecution to be dismissed . . . [i]f a defendant, whose trial has not been postponed upon his application, is not brought to trial in a superior court within sixty days after the finding of the indictment, or filing of the information. . . .' This section is subject to waiver by the failure of a timely assertion of the right. (*People* v. *O'Leary,* 130 Cal.App.2d 430 [278 P.2d 933].) Penal Code, sections 654, 687 and 1023 imperatively provide that no person shall be twice put in jeopardy for the same offense, but again, the failure to raise the plea of once in jeopardy results in a waiver. (*In re Hess,* 45 Cal.2d 171 [288 P.2d 5].) Another example of an apparently unconditionally guaranteed right, but one which is subject to waiver, is the right to a public trial. (Pen. Code, § 686, subdivision 1; *People* v. *Stanley,* 33 Cal.App. 624 [166 P. 596]; *People* v. *Tugwell,* 32 Cal.App. 520 [163 P. 508].) And of course, the right to defend 'with counsel' can be waived. (*People* v. *Justice,* 125 Cal.

App.2d 572 [270 P.2d 859].) A plea of guilty obviously waives the right to any trial at all. (*People* v. *Ryan,* 121 Cal.App.2d 651 [263 P.2d 850].)

"Thus, there is ample authority for holding that a statute granting a right to an accused in categorical terms may be waived by the voluntary act of the person entitled. That is this case. The defendant, by his own actions, induced the condition existing in the afternoon of the fourth day of the trial. This amounted to a waiver of the right to be mentally present granted by section 1043 of the Penal Code. If this were not the rule, many persons, by their own acts, could effectively prevent themselves from ever being tried. A diabetic can put himself in insulin shock by simply taking insulin and then not eating, or by refusing to eat, or can disable himself by failing to take insulin. Surely, the Legislature in adopting section 1043 did not intend such an absurd result."

Any effort to distinguish the *Rogers* case, *supra,* 150 Cal.App.2d 403, from the case at bench on the ground that one involves mental and the other physical absence would be factitious and contrary to existing case law interpreting Penal Code section 1043. Presence refers to both mental and physical presence. The *Rogers* case so interpreted Penal Code section 1043 as does *In re Dennis,* 51 Cal.2d 666 [335 P.2d 657] and *People* v. *Berling,* 115 Cal.App.2d 255, 267 [251 P.2d 1077]. The court in *In re Dennis, supra,* at page 672, unequivocally so states by quoting from *People* v. *Berling, supra,* 115 Cal.App.2d 255, 267-268: " 'The only reasonable interpretation of the above requirement that a defendant be present at every stage of a felony prosecution is that the accused person must be both physically and mentally present. Mere physical presence without mental realization of what was going on would obviously be of no value to the accused. A defendant in such condition would be unable to confer with or assist counsel, unable to testify, and without ability to understand the nature of the accusation or the mechanics or consequences of the trial. An interpretation of the rule as requiring only physical presence would lead to such an absurdity as the purported trial of an imbecile or an insane person without the least understanding of what was taking place in the courtroom. Only in the most unenlightened age could such a so-called trial be countenanced.' "

In *People* v. *Guillory* (1960) 178 Cal.App.2d 854 [3 Cal.Rptr. 415, 80 A.L.R.2d 1077], where a deaf defendant appeared in court without batteries for his hearing aid, the reasoning of *People* v. *Rogers, supra,* 150 Cal.App.2d 403, was followed.

Despite the language of Penal Code section 1043, which appears on its face to be mandatory, there are many cases which hold that the defendant's temporary absence or absence during a portion of the proceedings was of

no serious consequence: *People* v. *Brown* (1951) 102 Cal.App.2d 60 [226 P.2d 609] (pronouncement of judgment against an absent defendant in a criminal case: see Pen. Code, § 1193 (cf. Pen. Code, § 977) ); *People* v. *Morales* (1943) 60 Cal.App.2d 196 [140 P.2d 461] (instructions reread in defendant's absence); *People* v. *Boehm* (1969) 270 Cal.App.2d 13, 19 [75 Cal.Rptr. 590] (conference at which immunity was granted the co-defendant); *People* v. *House,* 12 Cal.App.3d 756, 766-767 [90 Cal.Rptr. 831] (conference in chambers between counsel on issues of law); *People* v. *Isby* (1947) 30 Cal.2d 879, 892-893 [186 P.2d 405] (withdrawal of an exhibit during defendant's absence); *People* v. *Trubschenk* (1955) 134 Cal.App.2d 796 [286 P.2d 436] (order made postponing trial to procure attendance of defendant); *People* v. *Teitelbaum* (1958) 163 Cal.App.2d 184 [329 P.2d 157] (conference in chambers); *People* v. *Mulvey* (1961) 196 Cal.App.2d 714 [16 Cal.Rptr. 821] (listening to the recording of a conversation with defendant outside the presence of the jury).

*State* v. *Way,* 76 Kan. 928 [93 P. 159] and *Hanley* v. *State,* 83 Nev. 461 [434 P.2d 440], involved statutes which in mandatory language required the presence of the defendant, and the court in each of those decisions held the voluntarily absent defendant waived the right to be present. In the Nevada case (*Hanley* v. *State*), the court made the sensible observation that the statute simply requires that the state not do anything or undertake any action that would preclude the defendant from being present and that if the defendant voluntarily absents himself he, thereafter, cannot complain of a situation that he created; he cannot take advantage of his own wrong.

It is pointed out by various cases that a contrary rule would require that the defendant be ordered into custody when the trial starts or else he could frustrate the proceedings at will by simply walking out—and this after much time and effort by court, counsel, jurors and witnesses have been put into the trial, not to mention the cost thereof. The Legislature certainly could not have intended to give approval to such conduct or to such an absurd result—nor should the courts.

If the appellant can waive any trial at all by pleading guilty, no convincing reason appears why he may not waive the procedural safeguards which are incidents of the trial. (*People* v. *Rogers, supra,* 150 Cal.App.2d 403, 414.) We so hold. To hold that a defendant can stop a trial by simply walking out would add 'some validity to the public's recently acquired tarnished image of the courts as institutions which, in their zeal to over-protect criminals from the consequences of their own voluntary acts, reverse convictions and turn the guilty free upon ludicrous and unsubstantial grounds and without regard to the welfare or safety of the law-abiding citizenry.

As we read the case of *People* v. *Anderson* (1970) 6 Cal.App.3d 364 [85 Cal.Rptr. 669], the contrary result therein reached is based primarily upon statutory interpretation. However, Penal Code section 1043, with the exception of the last sentence which has no direct bearing upon this problem, read the same when that case was tried in the lower court as it did when Justice Peters wrote the decision in *People* v. *Rogers, supra,* 150 Cal.App.2d 403.

In view of the case law interpreting Penal Code section 1043 prior to the legislative change in 1970, including the *Rogers* case, we are of the opinion that the 1970 amendments to that section were intended as clarification of existing law rather than as a change in the law. (*Koenig* v. *Johnson* (1945) 71 Cal.App.2d 739, 753-755 [163 P.2d 746].) These amendments are corroborative of the result we reach.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.