[No. B023755. Second Dist., Div. Five. Dec. 7, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY YONKO, Defendant and Appellant.

COUNSEL

Steven L. Doss for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, William R. Weisman, Roy C. Preminger and Joan Comparet, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, Acting P. J.—By jury trial appellant was found guilty of robbery (Pen. Code, § 211) and sexual battery (Pen. Code, § 243.4). He was sentenced to state prison.

The victim was accosted by appellant as she approached her parked car at 2 a.m. on November 20, 1985. Appellant grabbed her hair and pulled her to the ground. She began to scream but he held a hand over her mouth. He told her not to yell, and that he was going to stab her and "taste her." He pulled up her skirt, placing his hand on the outer side of the middle part of her right thigh, touching her stocking but not her skin. However, when she made a loud scream, appellant stood up, took her purse and ran.

She ran after him screaming, "Go get that man." Men in two cars followed appellant.

Kenneth DeLoach was a night security guard at a cafe about a block away. He heard the screams and saw appellant running down the street carrying a purse. As appellant turned the corner, two cars followed him and cornered him. One of the men from the cars stopped and picked up the purse. Appellant came back toward Mr. DeLoach, who detained appellant until the police arrived. The victim found appellant detained by Mr. De-Loach. One of the men from the cars returned the victim's purse.

IN-COURT PHOTOGRAPHIC IDENTIFICATION OF APPELLANT AFTER HE ABSENTED HIMSELF FROM TRIAL

Appellant was present in court only on the first day of trial (Friday) when a jury was selected. Appellant failed to show up on Monday and the court

continued the case until Tuesday. Appellant failed to appear again on Tuesday. During those two days, the court received inconsistent information from appellant's family about appellant's alleged illness. The court did not believe appellant was too ill to appear. The court determined that appellant was voluntarily absenting himself from trial and the court granted the prosecutor's motion to conduct the trial in appellant's absence pursuant to Penal Code section 1043, subdivision (b)(2), which provides: "(b) The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to and including, the return of the verdict in any of the following cases: [¶] (2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent." (See *People* v. *White* (1971) 18 Cal.App.3d 44, 48-53 [95 Cal.Rptr. 576].)

Since appellant was absent from trial, he was identified by photograph. (See, e.g., *People* v. *Vargas* (1975) 53 Cal.App.3d 516, 522, 524 [126 Cal.Rptr. 88].) The prosecutor had a booking photograph of appellant. The photo was marked as exhibit No. 1 and shown to the victim who testified, "Q. . . . . [¶] Ma'am, do you recognize that photograph? [¶] A. Yes. [¶] Q. And who is that? [¶] A. The man, he took my purse." The exhibit was also shown to Mr. DeLoach, who recognized it as the person he had detained on the night of the robbery. As we shall discuss, these identifications were corroborated in other ways.

Appellant's trial counsel objected to showing the photograph to the witnesses on the ground it would be "leading and suggestive." The objection was overruled. On redirect and recross-examination, the victim testified that before she took the stand the district attorney had showed her this one picture and asked her "[i]s that him?" Mr. DeLoach did not see the photograph until testifying at trial.

On appeal, appellant contends these were impermissibly suggestive identification procedures which deprived him of a fair trial. There is no merit to this contention. Ordinarily a criminal defendant can be *required* to be present in the courtroom for the purpose of identification. (Pen. Code, § 1043 ["nothing herein shall limit the right of the court to order the defendant to be personally present at the trial for purposes of identification unless counsel stipulate to the issue of identity"]; *People* v. *Breckenridge* (1975) 52 Cal.App.3d 913, 936 [125 Cal.Rptr. 425].) Where, as here, the defendant absents himself and cannot be found, his conduct requires that other means of identification be used. A single person photographic showup is not inherently unfair. (*People* v. *Floyd* (1970) 1 Cal.3d 694, 714 [83 Cal.Rptr. 608, 464 P.2d 64].) Showing the witnesses a single photo of the defendant is no more *impermissibly* suggestive than an in-court

identification with the defendant personally sitting at the defense counsel table in the courtroom. (See *People* v. *Breckenridge, supra,* 52 Cal.App.3d at p. 935; *People* v. *Green* (1979) 95 Cal.App.3d 991, 1003 [157 Cal.Rptr. 520].) Even under *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625 [114 Cal.Rptr. 121, 522 P.2d 681], a defendant who anticipates that a live in-court identification would be unduly suggestive and who wants a pretrial lineup procedure, must show that "eyewitness identification is . . . a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve"; even then the trial court must consider "not only . . . the benefits to be derived by the accused and the reasonableness of his request but also . . . the burden to be imposed on the prosecution, the police, the court and the witnesses." (*Ibid.; People* v. *Green, supra,* 95 Cal.App.3d at p. 1004; *People* v. *Rivera* (1981) 127 Cal.App.3d 136, 148-149 [179 Cal.Rptr. 384].)

 In this case, the need for a photographic identification arose from appellant's sudden voluntary absence after the trial had begun, therefore defense counsel's suggestion that the prosecutor should have been required to assemble a photographic showup was not reasonable in comparison to the burdens on the court, prosecution, the witnesses, and the jury. Moreover, this case does not involve a reasonable likelihood of misidentification. The perpetrator was chased as he fled the scene with purse in hand, and was immediately captured one block away. The victim and the security guard identified appellant at the preliminary hearing. Moreover, after the preliminary hearing, appellant on two occasions approached Mr. DeLoach and spoke to him. Mr. DeLoach testified: ". . . He stopped me and says—he asked me did I remember him and I said 'Yeah, I remember you.' And he says 'I got me a lawyer now and we're going to get you.' . . ." On the second occasion, "[H]e came over and told me that he had been going back and forth to the doctor and—and that he had cancer and that if he went to jail he was going to die in jail, and he's sitting there, tears running down his cheeks, and—he looks up at me and he says 'Can you help me out?' And I'm going 'What can I say?' . . ."

Under all the circumstances, no impermissibly suggestive procedures were used.[1]

### SEXUAL BATTERY

 The Attorney General concedes appellant's other contention that the evidence is insufficient to support appellant's conviction of sexual

[1]This case is not analogous to *People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395, 401-403 [132 Cal.Rptr. 30], cited by appellant, where the trial court, erroneously believing the defendant had waived any right to challenge allegedly unfair pretrial photographic procedures, refused to hear any evidence on that issue.

battery. Penal Code section 243.4 requires touching an intimate part of another person and subdivision (d) thereof defines "intimate part" to mean the sexual organ, anus, groin, or buttocks of any person and the breast of a female; at the time of appellant's offense, the statute also defined "touches" to mean physical contact with the skin of another person. (Stats. 1984, ch. 1495, § 1, p. 5265; *In re Keith T.* (1984) 156 Cal.App.3d 983, 987 [203 Cal.Rptr. 112]; *People* v. *Duke* (1985) 174 Cal.App.3d 296, 300 [219 Cal.Rptr. 873].) Here appellant touched only the outer middle thigh through a stocking.

■ However, where the evidence is insufficient to sustain the offense charged but shows that the defendant is guilty of a lesser included offense, or an attempt to commit the offense, or a lesser degree of the offense, the court may reduce the crime rather than reverse outright. (Pen. Code, §§ 1159, 1181, subd. 6, 1260; *In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5]; *People* v. *Enriquez* (1967) 65 Cal.2d 746, 749 [56 Cal.Rptr. 334, 423 P.2d 262]; *People* v. *Newman* (1971) 5 Cal.3d 48, 55 [95 Cal.Rptr. 12, 484 P.2d 1356]; Witkin, Cal. Criminal Procedure (1963) § 730, p. 701.) The Attorney General concedes that due to instructional error it would be inappropriate in this case to modify the offense to *attempted* sexual battery but does suggest that the conviction be modified to simple battery. (Pen. Code, §§ 242, 243, subd. (a).) We shall modify the conviction accordingly and remand to the trial court to sentence appellant for battery.

As to count III (sexual battery, Pen. Code, § 243.4), the judgment is modified to provide that defendant is convicted of battery (Pen. Code, §§ 242, 243, subd. (a)). The cause is remanded to the trial court to sentence defendant on count III. In all other respects, the judgment is affirmed.

Boren, J., and Hastings, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.