Filed 3/17/15  In re R.C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.C.,<br><br>        Defendant and Appellant. | A141492<br><br>(Alameda County<br>Super. Ct. No. SJ13020531) |

**I.**

**INTRODUCTION**

On February 3, 2014, a petition was filed under Welfare and Institutions Code section 602 in the Alameda County Superior Court alleging that 15-year-old minor R.C. (appellant) had robbed another juvenile of personal property, an iPhone 5.  (Pen. Code, § 211.)  Following a contested hearing, the court sustained the petition.  At the disposition hearing on March 25, 2014, the court continued appellant's wardship, and released him to his father's custody on GPS monitoring.

Appellant contends the trial court erred by denying his motion to suppress evidence of the victim's out-of-court photo identification which he claims was unduly suggestive.  Appellant also claims prosecutorial misconduct due to improperly coaching the victim prior to his rebuttal testimony.  Lastly, he argues the evidence was insufficient

to prove he was the person who committed the robbery. We disagree with these arguments and affirm the juvenile court's orders.

## II.

## FACTS AND PROCEDURAL HISTORY

The prosecution's chief witness was the robbery victim, who was a high school freshman at the time of the crime. When the victim got out of school on January 30, 2014, he went to a nearby gas station with his friends. After they made their purchases, appellant and another juvenile, who was later identified as J.G., were walking in front of the victim and his friends and kept turning around and looking at them.

J.G. eventually asked the victim if he had a phone, and he said no. Then J.G. came around, put him in a "headlock" and said: "Rob, his phone." The victim had his hands over his pockets to prevent them from taking his phone, but "[J.G.] said he was going to shoot me if I didn't let him take my phone, so I moved my hands and let [appellant] take it." Appellant pulled the victim's iPhone out of his pocket. J.G. told the victim that if he and his friends called the police, they would shoot them. The threat scared the victim because he did not want to get shot over a phone. He said the whole incident happened quickly, within a few seconds.

The victim recognized appellant as the person J.G. called "Rob" because they both previously attended the same middle school and they both currently were enrolled in the 10th grade at the same high school. The victim testified he had never actually spoken with appellant, but the victim recognized him from attending school together and "[m]y friends were friends with him . . . ." Furthermore, the victim repeatedly testified he had one class with appellant, a sixth period physical education (P.E.) class, so he saw

2

appellant on a daily basis.[1] The victim did not know J.G., the other assailant, and had never seen him before this incident.

After the encounter, the victim walked up to his former middle school and called the police on his friend's phone. Hayward Police Officer Wilson testified he interviewed the victim immediately after the incident. the victim identified one of the robbers by name, as a fellow student named "Rob or Robert" and gave the officer a physical description of both assailants. Officer Wilson called Officer Najera, a six-year veteran of the Hayward Police Department who was assigned to the high school as a school resource officer, and conveyed the information the victim had given him. Officer Wilson then received a text message on his cell phone that contained a photo of appellant, which he showed to the victim. The photo had appellant's name on it. The victim testified the officer said something like it might be the guy, it might not be the guy. The victim identified appellant as one of the persons who robbed him. The officer only showed the victim one picture. Officer Wilson then sent Officer Najera a text or called him saying "that's the guy."

The victim came to assistant principal Dave Seymour's office the day after the incident and said the person who robbed him was on campus that day. Based on what Officer Najera told him the day before, Mr. Seymour pulled up appellant's photograph and asked the victim if that was the person the victim was talking about, and the victim said yes. He pulled up a photograph of J.G., a student who was frequently seen with appellant. The victim was "about like 90" percent certain the person depicted in the photograph was the other robber.

At some point, the victim's friend K., who was an eyewitness to the robbery, was also brought into Mr. Seymour's office. K. was only shown two photographs, which K.

---

[1] As will be explained in great detail in conjunction with the issue on appeal alleging prosecutorial misconduct, the victim's testimony that appellant was in his sixth grade P.E. class was contradicted by school records. When the victim testified on rebuttal, he explained he frequently saw appellant in the area where his P.E. class was being held and mistakenly assumed he was in the class—an explanation that was found credible by the court.

identified as the persons who had taken the victim's iPhone. Based on their in-court observations, the victim and K. were 100 percent certain the two people who robbed him were appellant and J.G..

Appellant did not testify at the hearing. He presented evidence from L.V., an alibi witness who described herself as appellant's close personal friend. L.V. testified she was with appellant during the time of the robbery. They were picking up L.V.'s brother at the Eden Youth and Family Center. Additionally, appellant's father testified appellant did not own shoes that matched the description of the shoes described by the victim.

The trial court found the robbery charge true beyond a reasonable doubt. At the time of this offense, appellant had previously been adjudged a ward of the court and was on probation. The court set appellant's maximum custody time at five years four months. At the March 25, 2014 dispositional hearing, the court ordered appellant be placed with his father and be monitored by the "Family Preservation Unit." Appellant was released on GPS (global positioning system) monitoring and ordered to stay away from the victim and witnesses. This appeal followed.

## III.

## DISCUSSION

### A. Motion to Suppress Victim's Out-of-Court Photo Identification

During the contested hearing, appellant filed a written motion to suppress the evidence of his identification as one of the robbers. He argued that the identifications made by the victim (and to a lesser extent K.), from a single photograph was unduly suggestive and violated his due process rights. Appellant claims the trial court erred in denying the motion. Since the victim identifications were the sole evidence connecting appellant to the robbery, appellant claims his conviction should be reversed.

Due process requires the exclusion of identification testimony "if the identification procedures used were unnecessarily suggestive" and "the resulting identification was also unreliable. [Citations.]" (*People v. Yeoman* (2003) 31 Cal.4th 93, 123.) The threshold issue is whether the identification *procedure* was unduly suggestive and unnecessary. (See *People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.) If that initial question is answered

4

in the affirmative, the court must then determine whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the witness's opportunity to view the offender at the time of the crime, the witness's attentiveness, the accuracy of the witness's prior description, the level of certainty displayed at the identification and the time elapsed between the crime and the identification. (*People v. Ochoa* (1998) 19 Cal.4th 353, 412 (*Ochoa*); *People v. Cunningham* (2001) 25 Cal.4th 926, 989; *People v. Thomas* (2012) 54 Cal.4th 908, 930 (*Thomas*).)

Appellate courts give deferential review to the trial court's factual findings, especially those that turn on credibility determinations. However, we independently review the trial court's ruling regarding whether, under those facts, a pretrial identification procedure was unduly suggestive. (*Thomas*, *supra*, 54 Cal.4th at p. 930.) Only if the challenged identification procedure is unnecessarily suggestive is it necessary to determine the reliability of the resulting identification. (*Id*. at pp. 930-931; *People v. Alexander* (2010) 49 Cal.4th 846, 902; *Simmons v. United States* (1968) 390 U.S. 377, 384 [even if a witness has been subjected to a suggestive pretrial identification procedure, "eyewitness identification at trial . . . will be set aside on that ground only if the [pretrial] identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"].)

Appellant argues the court should have suppressed the identification evidence because "the identification procedure . . . was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification." There is no indication the victim's identification of appellant shortly after the robbery was based on unduly suggestive procedures. A single-person photographic show-up is not inherently unfair or impermissibly suggestive. (*Ochoa*, *supra*, 19 Cal.4th at pp. 413, 425–426; *People v. Contreras* (1993) 17 Cal.App.4th 813, 820-821 (*Contreras*) ["[N]umerous cases have found no due process violation from the admission of evidence of identifications made either at the time of or subsequent to a single photo show-up. [Citations.]"].) "Showing the witnesses a single photo of the defendant is no more

5

*impermissibly* suggestive than an in-court identification with the defendant personally sitting at the defense counsel table in the courtroom. [Citations.]" (*People v. Yonko* (1987) 196 Cal.App.3d 1005, 1008–1009, original italics.) ].) In fact, "single-person show-ups *for purposes of in-field identifications* are encouraged, because the element of suggestiveness inherent in the procedure is offset by the reliability of an identification made while the events are fresh in the witness's mind, and because the interests of both the accused and law enforcement are best served by an immediate determination as to whether the correct person has been apprehended. [Citation.]" (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 387, original italics.)

Here, the exigency of the circumstances certainly warranted the prompt single-photo show-up shortly after the robbery. During the robbery, the victim recognized appellant as being a fellow student at Hayward High School. He had provided Officer Wilson the first name, "Rob" or "Robert" along with a physical description. Based on this information, a school photograph was quickly retrieved and shown to the victim. Officer Wilson made no suggestive comments; instead, he admonished the victim that the person depicted in the photograph might not be the perpetrator. The victim unequivocally identified appellant as one of the persons who took his iPhone. With the crime fresh, and without any misconduct by the police or impermissible suggestions, we agree with the trial court that the circumstances warranted the police officer's quick retrieval of the single photograph. Showing it to the victim was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. (See, e.g., *People v. Pervoe* (1984) 161 Cal.App.3d 342, 359.)

Assuming, arguendo, that the single-photo identification procedure was unduly suggestive, appellant still must show the in-court identification was unreliable based on the totality of the circumstances. (*Stovall v. Denno* (1967) 388 U.S. 293, 301–302, overruled on other grounds in *Griffith v. Kentucky* (1987) 479 U.S. 314, 321-322; *Ochoa*, *supra*, 19 Cal.4th at p. 412.) Appellant "bears the burden of proving unfairness as a 'demonstrable reality,' not just speculation. [Citations.]" (*Contreras*, *supra*, 17 Cal.App.4th at p. 819.) Based on our review of the totality of the circumstances, we

6

conclude that the victim's identification of appellant as the person who took the iPhone out of his pocket was reliable. When appellant robbed him, the victim immediately recognized him from multiple prior encounters during their years together attending the same schools. By the time he was shown the single photograph, the victim had already identified appellant by his first name (Rob or Robert), and had given the officer a complete physical description which accurately described appellant.[2]

Therefore, the victim's positive identification of appellant as one of the persons who robbed him after viewing the single photograph was not the result of any misconduct by law enforcement. Instead, he had a strong independent foundation on which to identify appellant based on multiple prior opportunities to observe appellant's appearance. Under the totality of the circumstances, we conclude the victim's identification of appellant as one of the persons who robbed him was reliable. Therefore, the admission of evidence of the victim's identification did not violate appellant's constitutional due process rights.

## B. Prosecutorial Misconduct

Appellant next claims that outside the courtroom, in preparation for recalling the victim as a witness after he had already testified, the prosecutor improperly coached the victim and caused him to change his testimony.

The victim testified on direct examination that he had seen appellant almost every day in his sixth period P.E. class. In support of his claim of prosecutorial misconduct, appellant cites the victim's subsequent testimony that when the prosecutor came to serve the victim's subpoena to secure his testimony for rebuttal, the subject of who was in the victim's P.E. class was discussed. The prosecutor asked the victim whether he was sure appellant was in his P.E. class. The prosecutor told the victim that school records revealed appellant was *not* enrolled in the victim's P.E. class.

_____

[2] The victim reported to police that one of the robbers was "some guy named Rob," an Hispanic male, five feet nine inches in height and weighing approximately 150 pounds. The parties stipulated that appellant was five feet eight inches in height and weighed 150 pounds.

7

The victim testified he just "put [it] together on [his] own" that appellant was not actually in his P.E. class, but instead was *near* the class on many occasions. The victim stated, "Well, I know he was in my P.E. period. I don't know if I said my specific class." The victim indicated he "would see [appellant] there every day." What the victim really meant now was that appellant was frequently standing near the victim's P.E. class during sixth period.

After the victim gave the foregoing testimony, appellant moved for a mistrial on the ground of prosecutorial misconduct. The court denied the motion without comment. Appellant claims this ruling was in error because "the prosecutor committed misconduct by personally informing the victim on March 7, 2014—before the victim's intended rebuttal testimony—that appellant was *not* in the victim's sixth period P.E. class." (Italics added.) He claims the evidence "clearly establishes that the prosecutor's coaching of this witness amounted to reversible misconduct."

Based on our review of the record, we conclude that there is insufficient evidence the prosecutor's preparation of the victim for rebuttal testimony amounted to impermissible coaching or an attempt to fabricate false testimony. According to federal and state standards regarding prosecutorial misconduct, " ' "[a] prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 (*Samayoa*).) "A defendant's conviction will not be reversed for prosecutorial misconduct . . . unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. [Citation.]" (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

The record before us fails to show a pattern of conduct by the prosecutor so egregious, deceptive, or reprehensible with respect to the preparation and questioning of

8

the victim as to render the trial fundamentally unfair, thereby denying appellant due process. (See *Ochoa*, *supra*, 19 Cal.4th at p. 427; *People v. Hill* (1998) 17 Cal.4th 800, 819.) First of all, appellant fails to establish that any prejudicial prosecutorial misconduct occurred. It is well settled that " 'the prosecution cannot present evidence it knows is false and must correct any falsity of which it is aware in the evidence it presents, even if the false evidence was not intentionally submitted.' [Citation.]" (*People v. Morrison* (2004) 34 Cal.4th 698, 716.) "Put another way, the prosecution has the duty to correct the testimony of its own witnesses that it knows, or should know, is false or misleading. [Citation.] This obligation applies to testimony whose false or misleading character would be evident in light of information known to the police involved in the criminal prosecution . . . .)" (*Id.* at pp. 716-717.) Thus, in preparing the victim for his rebuttal testimony, it was not prosecutorial misconduct for the prosecutor to apprise the victim that the school's records did not support his recollection that appellant was in his P.E. class.

Perhaps most critically for our analysis of this issue, there is *no evidence* here that the prosecutor told the victim to lie, encouraged him to do so, or attempted to alter his recollection of the facts. Therefore, there is no evidence that the prosecutor coached the witness. To the contrary, the victim testified that he figured out on his own that appellant was frequently in the vicinity of his P.E. class but not actually in the class itself.

Moreover, defense counsel conducted cross-examination of the victim regarding the extent and degree of his pre-testimony contact with the prosecutor, the content of their discussions, the degree to which the prosecutor prepared his testimony, and appellant's actual recollection of the events at issue. The judge, who was the trier of fact, was given the opportunity to evaluate the victim's credibility and to assess his ability to recall events independently.

In short, on the record presented here, we cannot say that the prosecutor used deceptive or reprehensible methods to persuade the court appellant participated in the robbery. (*Samayoa*, *supra*, 15 Cal.4th at p. 841.) This incident did not involve prejudicial prosecutorial misconduct.

### C. Substantial Evidence Supports The Trial Court's Findings

Appellant next contends that in the absence of corroborating evidence, the evidence was insufficient to support a finding that he was one of the persons who committed the robbery. We disagree.

In considering a sufficiency of the evidence claim in juvenile proceedings, this court applies the same standard of review that is applicable in criminal cases. (*In re Roderick P.* (1972) 7 Cal.3d 801, 808–809.) Thus, this "court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.)

As appellant acknowledges, an out-of-court identification does not require any special corroboration to support a criminal conviction (or juvenile adjudication). (*People v. Cuevas* (1995) 12 Cal.4th 252, 257; *People v. Allen* (1985) 165 Cal.App.3d 616, 623 ["[A]bsent physical impossibility or inherent improbability, the testimony of a single eyewitness is sufficient to support a criminal conviction. [Citation.]".) Nevertheless, in a repeat of appellant's first argument on appeal, he argues the circumstances surrounding his identification as one of the robbers were unduly suggestive, and the identification was unreliable. He also sets out inconsistencies in the victim's testimony, principally the victim's confusion over whether or not appellant was in his P.E. class, that he claims demonstrates the victim's lack of credibility. Furthermore, he points out various inconsequential details in the trial court's oral findings which he claims are not supported by the evidence adduced at the contested hearing. He also asserts L.V., his alibi witness, "was a credible witness" whose testimony should have been acknowledged by the court in making its findings. None of these assertions compel us to overturn the juvenile court's findings.

10

As our Supreme Court has explained, "[t]o warrant the rejection of the statements given by a witness who has been believed by [the fact finder], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Huston* (1943) 21 Cal.2d 690, 693, disapproved on another ground in *People v. Burton* (1961) 55 Cal.2d 328, 352.)

Here, the arguments made by appellant do not meet the demanding standards for rejecting a witness's testimony. The juvenile court, as the trier of fact, heard extensive evidence about the circumstances surrounding the victim and K.'s identifications of appellant as one of the robbers. Defense counsel cross-examined the witnesses closely about their ability to identify the suspects. During closing argument, defense counsel pointed out circumstances suggesting the eyewitness identifications were unreliable. The juvenile court made credibility determinations and drew rational inferences from the evidence that amply support its finding that appellant was one of the persons who robbed the victim of his iPhone. We are not authorized to substitute our judgment for that of the juvenile court. "[W]hen the circumstances surrounding the identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court. [Citation.]" (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.) In sum, there was sufficient evidence to support the juvenile court's determinations.

## IV.

## DISPOSITION

The orders of the juvenile court are affirmed.

11

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
STREETER, J.