Filed 12/31/13  P. v. Mason CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BLASÉ MASON,<br><br>    Defendant and Appellant. | B246642<br><br>(Los Angeles County Super. Ct.<br> No. BA402152) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed.

Mona D. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Blasé Mason guilty in count 1 of first degree residential burglary (Pen. Code, § 459)[1] and in count 2 of receipt of stolen property (§ 496, subd. (a)). The trial court found defendant had suffered a prior serious felony conviction under section 667, subdivision (a)(1), a prior serious or violent felony conviction under the three strikes law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)), and two prior prison terms under section 667.5, subdivision (b).

Defendant was sentenced to two years on count 1, doubled under the three strikes law, plus a five-year enhancement for the prior serious felony conviction, and two one-year enhancements for the prior prison terms for a total term of 11 years in state prison. A 32-month sentence on count 2 (16 months doubled pursuant to the three strikes law) was imposed and stayed under section 654.

Defendant contends the judgment must be reversed due to a violation of his constitutional right to confront witnesses, improper admission of prejudicial evidence, unconstitutionally suggestive identification, and cumulative error.

We affirm the judgment.

## FACTS[2]

Michele Paniz and Justin Dana were co-owners of a duplex held in joint tenancy. The units had identical floor plans. Paniz lived in the ground unit, and Dana lived in the second floor unit.

At approximately 3:55 p.m. on September 2, 2012, Paniz was working at home alone when she noticed someone she did not recognize running up the outside staircase towards Dana's front door. Paniz could not initially tell whether the person was a woman

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

[2] Because defendant did not call witnesses on his behalf, the statement of facts reflects the evidence as presented by the prosecution at trial.

or a man. Dana and his girlfriend had gone to a barbeque with Paniz's family, so she knew no one was in the upstairs unit.

Paniz heard "extremely loud" knocking or "banging" on Dana's front door and on the window to the left of the door. When the banging ended, Paniz heard what sounded like footsteps inside of Dana's second floor unit. Alarmed, Paniz called 911. As the male intruder exited Dana's unit using the stairs, Paniz was able to take four cell phone photos from her breakfast-nook window. The photos did not capture the man's features. Paniz got a "pretty good look" at the intruder's clothing. He was wearing light blue jeans, a light-colored polo-style shirt, a hat worn backwards, and a "black back brace" with black suspenders, typically worn for heavy lifting. Paniz gave the description to the 911 operator as she watched the intruder exit and walk away from the residence.

During Paniz's 911 call, Los Angeles Police Department officers arrived at her residence. The officers arrested defendant at approximately 4:09 p.m., one block from Dana's unit. Defendant had burglary tools, including a metal bar, a lawn-mower blade, and a spark plug in his back pocket. He was also in possession of stolen cash, jewelry, and other property belonging to Dana. Defendant was standing in the middle of a police-blocked street handcuffed and in the presence of other officers. Paniz made the identification while sitting in the back seat of a squad car a few houses away. She made the identification based on defendant's clothing and the black back brace.[3] Her identification of defendant occurred about 45 minutes after he left Dana's unit.

Officer David Jamieson arrested and searched defendant. As a burglary expert, Officer Jamieson described how spark plugs are a favored tool for burglars, and that officers are trained on their use. Spark plugs are uniquely suited to break windows easily because their weight concentrates a large force in a small area. Officer Jamieson has personally arrested burglars with spark plugs in their possession. Detective Paul Quan testified regarding his investigation of the points of entry.

---

[3] No back brace was booked into evidence, but Officer Jamieson testified that he remembered defendant wearing something with black straps across his back.

## DISCUSSION

**Limitation on Cross-Examination and Impeachment of Detective Quan**

In her opening statement, defense counsel told the jury the fingerprint evidence taken at the crime scene did not match defendant. The following day outside the presence of the jury, the prosecution moved to exclude mention of fingerprint evidence with respect to Officer Jamieson's testimony. The prosecution argued Officer Jamieson had no personal knowledge of the fingerprint seizure, so his testimony would be inadmissible hearsay. Defense counsel conceded that Officer Jamieson lacked the requisite personal knowledge but argued Detective Quan was present at the fingerprint seizure and knew the prints did not match defendant. When pressed by the trial court, defense counsel conceded she was uncertain whether Detective Quan was present when the prints were taken but stated she believed she could ascertain whether he was with a few brief questions.

The trial court ruled: "[Y]ou may not inquire regarding print results or print-taking unless the witness has personal knowledge. [¶] You can inquire of the witness if they were present when prints were taken. You cannot tell the jury about any matches. Simply, the investigation of the location, what personal knowledge a witness has about the investigation or lack of investigation in their presence, you're free to ask. But as far as stating, are you aware that prints were taken, are you aware that no match was taken, absent personal knowledge, you're prohibited from asking those questions. [¶] Understood?"

Defense counsel responded "Yes."

On the same day, during cross-examination of Detective Quan, defense counsel questioned the witness:

"[Defense Counsel]: And are you aware that there were latent prints that were taken from Mr. Dana's house?

"[Detective Quan]: Yes, Ma'am.

"[Defense Counsel]: And are you aware that those prints did not come back to [defendant]?

"[Detective Quan]: The report I received from –

"[The Court]: The objection is sustained.

"[Prosecutor]: Well, Your Honor, I think counsel asked the question. I'm going to ask the witness to answer.

"[The Court]: All right. [¶] Go ahead.

"[Detective Quan]: The answer is, I received a report from LAPD Scientific Investigation Division, Latent Print Unit, indicating that the two palm prints that was lifted was not of AFIS quality; thus, it could not be run through the system to come back to any person. It was not the quality needed to be analyzed."

Soon afterward, defense counsel asked for a laboratory receipt to be marked as an exhibit. The prosecution objected and requested a recess. The jury was excused.

The prosecutor objected to defense counsel marking the laboratory receipt, which was not prepared by Detective Quan, into evidence as inadmissible hearsay. Defense counsel explained that she wished to offer the laboratory receipt as impeachment evidence, and not as evidence of the truth of the contents of the receipt. The receipt contained a check box indicating the prints were AFIS quality, in contradiction of Detective Quan's testimony that the prints were not of sufficient quality to be analyzed. The trial court reminded defense counsel it had given a very clear order not to question the witness regarding whether there was a match on the fingerprints, and she had violated the order. The court then stated defense counsel would be allowed to question Detective Quan as to whether he was relying on the laboratory report, and, if so, impeach him. A foundational hearing was held in which Detective Quan testified he did rely on a report of which he had no personal knowledge, and he was mistaken about the quality of the fingerprints. The prints were AFIS quality according to the report and did not match defendant.

The trial court ruled defense counsel could elicit clarification of Detective Quan's testimony but restricted the scope of the detective's response to testimony that he was

5

mistaken that the fingerprints were not of ASIF quality. Detective Quan was prohibited from testifying as to whether the fingerprints were a match to defendant or as to any other results of the analysis.

Cross-examination resumed and defense counsel asked Detective Quan if he wished to clarify his last answer. He responded yes and stated he had been mistaken and the prints were of sufficient quality to be analyzed.

Later, in closing argument, both parties stated the fingerprints did not match defendant.

Defendant contends his constitutional right to confront witnesses was violated because the trial court limited the scope of his cross-examination of Detective Quan, inhibiting his ability to impeach the detective. This contention is without merit.

The confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) "The constitutional right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility." (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 841-842.) "As the high court has explained, cross-examination is required in order 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' [Citation.]" (*People v. Smith* (2007) 40 Cal.4th 483, 513.) "'[But i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' [Citation.]" (*People v. Ayala* (2000) 23 Cal.4th 225, 269.) "[N]ot every restriction on a defendant's cross-examination rises to a constitutional violation." (*People v. Singleton* (2010) 182 Cal.App.4th 1, 18.) "The right of confrontation is not absolute . . . [citations], 'and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' [Citation.]" (*Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1138-1139.)

"'[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination . . . .' [Citations.]" (*People*

*v. Greenberger* (1997) 58 Cal.App.4th 298, 350 (*Greenberger*).) "Ordinarily, proper application of the statutory rules of evidence does not impermissibly infringe upon a defendant's due process rights." (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 119.) "'[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. [Citation.]' [Citations.] . . . There is no Sixth Amendment violation at all unless the prohibited cross-examination might reasonably have produced a significantly different impression of credibility." (*People v. King* (2010) 183 Cal.App.4th 1281, 1314-1315, fn. omitted (*King*).) "If it is determined that trial court rulings limiting cross-examination of a witness have denied the defendant his right of confrontation, the error is subject to harmless-error analysis. 'The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. . . .' [Citations.]" (*Greenberger*, *supra*, 58 Cal.App.4th at p. 350.)

The limitations the trial court imposed were reasonable in this case. Because Detective Quan had no personal knowledge of the laboratory report or results of the fingerprinting, any testimony made regarding them would constitute impermissible hearsay under Evidence Code 1200. The court allowed defense counsel to elicit Detective Quan's self-impeaching testimony that he incorrectly stated the fingerprints were not of sufficient quality to analyze. This was all that was necessary to contradict the detective's earlier inaccurate statement and undermine the credibility of his statements. The prohibited cross-examination would not "reasonably have produced a significantly different impression of credibility." (*King*, *supra*, 183 Cal.App.4th at p. 1315.) Allowing such testimony would only have served the purpose of exposing the jury to evidence for which there could be no proper foundation from the witness. Detective Quan did not analyze the fingerprints, witness the analysis, or even have knowledge of how such an analysis would be performed. On these bases, the court specifically ordered the results not be mentioned in Detective Quan's testimony. Had the defense wished to present the results of the fingerprinting analysis to the jury, it could have done so by subpoenaing the

analyst who performed the testing. The court was not required to allow defendant to circumvent the rules of evidence by violating a court order and then crying foul when the witness did not testify as expected.

Moreover, any error was harmless beyond a reasonable doubt. Defense counsel told the jury the fingerprints did not match defendant in both her opening statement and closing argument, and the prosecutor conceded in closing argument that there was no match to defendant. Had there been any doubt with respect to the veracity of Detective Quan's statement previously, that doubt would disappear in the face of the parties' agreement on the issue. Additionally, overwhelming evidence of defendant's guilt was presented at trial. Defendant was apprehended one block from the crime scene, approximately five minutes after the burglary was completed. Paniz identified defendant, took cell phone pictures of him to which she could refer if in doubt, and noted a distinctive black back brace he was wearing at the field line-up. Defendant was in possession of burglary tools, including a metal pry bar, spark plug, and mower blade, as well as cash and jewelry stolen from Dana's home.[4] In light of this evidence, we cannot conclude defendant was prejudiced by the trial court's ruling.

**Admission of the Spark Plug**

Defendant contends the trial court erred in admitting evidence he was carrying a spark plug in his pocket when apprehended, because the evidence was highly prejudicial and irrelevant. We disagree.

In general, evidence is admissible if its probative value is not substantially outweighed by the probability that it will unduly consume time, "create substantial danger of undue prejudice," confuse the issues, or mislead the jury. (Evid. Code, § 352.) Evidence is probative if it "tends 'logically, naturally, and by reasonable inference' to

---

[4] As we will discuss below, the spark plug was properly admitted and the field line-up was not unconstitutionally suggestive, but even in the absence of this evidence, proof of defendant's guilt was overwhelming.

establish material facts such as identity, intent, or motive.  [Citations.]"  (*People v. Garceau* (1993) 6 Cal.4th 140, 177, overruled on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117-118 (*Yeoman*).)  Evidence is not unduly prejudicial solely because it implicates defendant.  "'[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case.  The stronger the evidence, the more it is "prejudicial."  The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging."'  [Citation.]"  (*People v. Karis* (1988) 46 Cal.3d 612, 638.)  "[T]he decision on whether evidence . . . is relevant, not unduly prejudicial and thus admissible, rests within the discretion of the trial court."  (*People v. Albarran* (2007) 149 Cal.App.4th 214, 224-225.)  We therefore review the trial court's ruling for abuse of discretion.  (*Id.* at p. 225.)

Here, Officer Jamieson described how spark plugs are uniquely suited to break windows easily because their weight concentrates a large force in a small area.  Due to their small size, they are a favored tool of burglars, and officers are trained on their use.  Officer Jamieson had personally arrested burglars with spark plugs in their possession.  Possession of a common burglary tool in a burglary prosecution is highly relevant, particularly on the issue of intent.  There is nothing inherently prejudicial, as that term is defined in Evidence Code section 352, in evidence describing a common burglary tool.  There was nothing "arbitrary, capricious, or patently absurd" in the trial court's ruling.  (*People v. Ochoa* (2001) 26 Cal.4th 398, 437-438 [trial court abuses its discretion when it allows evidence to be admitted in "'"an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'  [Citations.]"].)

**Identification**

Defendant also challenges the constitutionality of Paniz's field identification.  He argues the field identification was unconstitutionally suggestive, because Paniz viewed

9

and identified him from "two or three driveways away" from the back seat of a squad car, as the sole suspect, handcuffed, surrounded by officers, and in the middle of a cordoned-off street. We agree with the Attorney General that defendant forfeited his claim by failing to raise it below. (*People v. Elliott* (2012) 53 Cal.4th 535, 585-586.) However, even if the claim had not been forfeited, it would fail because the identification was reliable under the totality of the circumstances.

"In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification. [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*); see also *Manson v. Brathwaite* (1977) 432 U.S. 98, 104-107, 114.) Unless the challenged procedure is "unnecessarily suggestive," the trial court need not make an assessment of the reliability of the identification that resulted from the procedure. (*Yeoman, supra,* 31 Cal.4th at p. 125.) "Moreover, there must be a 'substantial likelihood of irreparable misidentification' under the ""totality of the circumstances"" to warrant reversal of a conviction on this ground. [Citation.]" (*Cunningham*, *supra*, at p. 990.) "[E]ach case must be considered on its own facts . . . ." (*Simmons v. United States* (1968) 390 U.S. 377, 384.) "We must resolve all evidentiary conflicts in favor of the trial court's findings and uphold them if supported by substantial evidence." (*People v. Contreras* (1993) 17 Cal.App.4th 813, 819.)

Defendant fails to show the field identification violated his constitutional rights in this case. Paniz had ample opportunity to view defendant prior to the identification, specifically observing defining characteristics such as the back brace he wore and his clothing. She paid close attention throughout the offense and even took cell phone

10

pictures to verify the correctness of her memory. She accurately described defendant prior to making the identification and demonstrated a high level of certainty when she identified him. The time lapse between the offense and the identification was approximately 45 minutes, a short period of time in which her memory was unlikely to degrade. She was admonished that the person being shown was in temporary custody, which does not indicate his guilt or innocence, and the purpose of the procedure was to either eliminate or identify the suspect. The record presented reveals nothing more than a standard field identification, made by an unusually attentive witness, which was reliable under the totality of the circumstances.

**Cumulative Error**

Defendant argues the errors alleged, even if not individually prejudicial, are prejudicial when taken together. There was no cumulative error, as any error was inconsequential. (*See People v. Hines* (1997) 15 Cal.4th 997, 1075.)

## DISPOSITION

The judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.                                   O'NEILL, J.[*]

---

[*]     Judge of the Ventura County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11